UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOMMY JOHN, INC.,<br><br>Plaintiff,<br><br>- against -<br><br>DICK'S SPORTING GOODS, INC. and AMERICAN SPORTS LICENSING, LLC,<br><br>Defendants. | Case No. __________<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Tommy John, Inc. ("Tommy John" or "Plaintiff"), by and through its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, brings this Complaint against Defendants Dick's Sporting Goods, Inc. ("DSG") and American Sports Licensing, LLC ("ASL" and, collectively with DSG, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1. This is an action for trademark infringement and unfair competition arising from Defendants' intentional, willful, and continuing infringement of Tommy John's well-known trademark "SECOND SKIN," which Tommy John has used continuously since at least 2009 in connection with the sale of high-quality underwear, undershirts and loungewear in the United States (the "SECOND SKIN Mark"). Fully aware of Tommy John's rights in its SECOND SKIN Mark, just a few months ago Defendants launched an undergarment clothing line under the designation "Second Skin," using ***identical*** words on products similar to those offered by Tommy John. Defendants' willful infringement causes a likelihood of confusion in the marketplace, and has caused immediate and irreparable harm to Tommy John and its SECOND SKIN Mark, as well as to consumers. Tommy John seeks, among other things, damages and an injunction prohibiting Defendants from their infringing use of the "Second Skin" designation.

**THE PARTIES**

2. Plaintiff Tommy John, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 100 Broadway, 11th Floor, New York, New York 10005.

3. On information and belief, Defendant Dick's Sporting Goods, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 345 Court Street, Coraopolis, Pennsylvania 15108.

4. On information and belief, Defendant American Sports Licensing, LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business at 345 Court Street, Coraopolis, Pennsylvania 15108. On information and belief, American Sports Licensing, Inc., a Delaware corporation, merged with and into American Sports Licensing, LLC in 2006. On information and belief, ASL is a subsidiary of DSG, and is the entity that owns and controls, on behalf of and under the direction and control of DSG, the three federal trademark registrations relating to "Second Skin" that Defendants have asserted against Tommy John, as alleged herein.

**JURISDICTION AND VENUE**

5. This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New York State law. This Court has subject matter jurisdiction over Tommy John's federal claims pursuant to 15 U.S.C. §§ 1119 & 1121 and 28 U.S.C. §§ 1331 & 1338, and over its state-law claims pursuant to 28 U.S.C. §§ 1338 & 1367. This Court has jurisdiction over Tommy John's claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

6. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have substantial, continuous and systematic contacts with the state of New York and have availed themselves of the privilege of conducting activities in the State. In

addition, Defendants have committed, and continue to commit, the acts giving rise to this action in this District, including by having (directly and/or indirectly) distributed, sold and/or offered for sale infringing products or services in the state of New York, and have partnered with companies located in New York to sell Defendants' infringing products or services, causing injury within the District, this state and throughout the country.

7. Venue is proper in this District at least under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this litigation occurred in this District and because Defendants are subject to personal jurisdiction within New York.

**TOMMY JOHN'S "SECOND SKIN" MARK**

8. The idea for Tommy John began when its founder, Tom Patterson, then a medical-device salesperson, experienced the all-too-common frustration of his underwear and undershirt bunching, pinching and sagging throughout the day. Tom made it his mission to find solutions to these problems. With the support of his wife and a small team of designers, Tom launched Tommy John's clothing business in 2008. Tommy John's inventive products quickly found nationwide and international success.

9. Tommy John sells underwear, undershirts, loungewear, socks and other goods under various brand names. In addition to appearing on the goods themselves, the well-known Tommy John name appears prominently on the packaging of all products that Tommy John sells.

10. Since at least 2009, Tommy John has used the trademark "SECOND SKIN" in connection with its promotion, marketing and sale of underwear, undershirts and loungewear throughout the United States and around the world. Since launching the SECOND SKIN brand in 2009, Tommy John has invested substantial time, effort and money to advertise and promote the SECOND SKIN Mark and its SECOND SKIN-branded offerings through various marketing channels, including radio advertisements, television advertisements, print publications and digital

means, including websites and social media. The SECOND SKIN brand has also benefitted from unsolicited publicity.

11. As a result of Tommy John's long-term and continuous use of the SECOND SKIN Mark in connection with its products, and its substantial investment of time, effort and money in the brand, Tommy John has built substantial goodwill and equity in its SECOND SKIN Mark—the SECOND SKIN Mark is well known, and consumers in the United States and around the world have come to associate it with Tommy John and to recognize it as a premium, comfortable and unique product line with significant brand loyalty. Tommy John has earned significant sales in the United States of SECOND SKIN-branded offerings, and the SECOND SKIN Mark is an exceptionally valuable asset to Tommy John.

12. In addition, because the words "second skin" do not directly describe Tommy John's products, the SECOND SKIN Mark is at least suggestive and thus inherently distinctive.

13. Thus, since at least its inception in 2009, and certainly by 2011, Tommy John has held valid and enforceable nationwide trademark rights in its SECOND SKIN Mark.

**DEFENDANTS' INFRINGING CONDUCT**

14. On information and belief, in or around February 2017, Defendants first used the designation "Second Skin"—the identical words to Tommy John's SECOND SKIN Mark—in connection with clothing, including, but not limited to, leggings, socks, jerseys, tank tops, baselayer bottoms, jogging pants, knit shirts, sleeveless jerseys, sports shirts, sports bras, sports pants, sweatpants, undershirts, underwear and loungewear (the "Defendants' Products"). Certain of Defendants' Products bearing the "Second Skin" designation (the "Infringing Mark") either directly compete with, or compete with products naturally related to, products offered under Tommy John's SECOND SKIN Mark (the "Infringing Products"), and thus infringe Tommy

John's rights. On information and belief, such Infringing Products include, but are not limited to, undershirts, underwear, loungewear and sports bras.

15. On information and belief, in or around July 2017, after having been placed on notice by Tommy John that the Infringing Mark infringes Tommy John's SECOND SKIN Mark, Defendants ***increased*** their use of the Infringing Mark, including by launching advertising and sales (including online and in DSG's stores) of Infringing Products under the Infringing Mark.

16. Defendants' unauthorized use of the SECOND SKIN Mark in connection with the Infringing Products falsely indicates to consumers that the Infringing Products are connected with, sponsored by, affiliated with, or related to Tommy John. Defendants' conduct likely has created and likely will continue to create confusion in the marketplace, as consumers are likely to believe that the Infringing Products are authorized or endorsed by Tommy John or that the Infringing Products are somehow associated, affiliated with, or sponsored by Tommy John. In addition, under the doctrine of reverse confusion, the SECOND SKIN Mark is likely to be wrongly associated in consumers' minds with Defendants and not with Tommy John.

17. The Infringing Products directly compete with, or compete with products naturally related to, Tommy John's SECOND SKIN products. Defendants also market the Infringing Products to consumers similar to those of Tommy John, and offer the Infringing Products for sale through similar channels of trade as Tommy John's SECOND SKIN products, including online at http://www.secondskin.com and http://www.dickssportinggoods.com/s/second-skin (both of which, on information and belief, are owned, operated and/or controlled by Defendants), as well as in stores.

18. Defendants' selection of the name "Second Skin" was not accidental; it was a calculated attempt to trade off of the goodwill and equity associated with Tommy John's

valuable SECOND SKIN Mark. For example, on information and belief, in addition to trading off of the SECOND SKIN Mark, Defendants copied distinctive aspects of Tommy John's product designs, including Tommy John's well-known "Quick Draw" horizontal fly design. At a minimum, Defendants selected the name "Second Skin" with full knowledge of and reckless disregard for Tommy John's rights in its SECOND SKIN Mark.

19. Defendants' use of the Infringing Mark on the Infringing Products is in bad faith, with full knowledge of Tommy John's rights in the SECOND SKIN Mark and with the intent to deceive and mislead the public into believing that the Infringing Products are sponsored, licensed, authorized by, affiliated, connected, or otherwise associated with Tommy John.

20. Defendants continue to advertise and sell their Infringing Products under the Infringing Mark without the consent or authorization of Tommy John, causing immediate and irreparable harm to Tommy John and the valuable SECOND SKIN Mark.

21. The foregoing acts are causing direct immediate and irreparable harm to Tommy John, its actual and potential customers, and the valuable SECOND SKIN brand. Tommy John has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. Tommy John will continue to suffer irreparable damage and harm to its reputation and sustain lost profits until Defendants' actions are enjoined.

**THE DEMAND LETTERS**

22. Earlier this year, Tommy John received a letter, dated January 27, 2017 and sent on behalf of ASL, demanding that Tommy John cease and desist from any and all use of its SECOND SKIN Mark. In that letter, ASL—through reference to a purported "predecessor in interest"—relied on an alleged 2015 assignment by the Canadian company Second Skin & Otis, Ltd. ("Otis") to ASL of rights to the name "Second Skin"; U.S. Trademark Registration Nos. 4,561,374 (registered July 1, 2014) ("Second Skin") and 4,535,498 (registered May 27, 2014)

("Second Skin Garment Company"); and Trademark Application Serial No. 85,418,793 (intent-to-use application filed September 9, 2011; first used February 2017) ("Second Skin").

   a. The goods recited in Registration No. 4,561,374 are as follows: "golfwear, namely, long sleeve polo shirts, pullovers, thermal pullovers, thermal jackets, waterproof vests, waterproof short sleeve jackets, waterproof pants, water resistant jackets, water resistant pullovers, water resistant shortsleeve jackets, water resistant shortsleeve pullovers, water resistant vests, soft shell jackets, softshell pullovers, softshell vests; clothing, namely, sweaters, longsleeve t-shirts, crew or v-neck pullovers, shirts, polo shirts, polo t-shirts, sweatshirts, and fleecewear, namely, fleece jackets, fleece vests, fleece pullovers; outerwear, namely, jackets, rain vests, wind jackets, hooded jackets, wind shirts, vests, rain pants; pants, waterproof jackets, rainwear; clothing, namely, T-shirts, long sleeve shirts, mock turtle necks; hats, shorts, shirts; headwear for winter and summer, namely, caps; rain suits; jackets for winter; jackets for summer; pullovers; baselayer tops; capri pants; dresses; golf caps; golf shirts; hooded pullovers; moisture-wicking sports shirts; rain jackets; rainproof jackets; short-sleeve shirts; ski jackets; tennis wear."

   b. The goods recited in Registration No. 4,535,498 are as follows: "clothing, namely, sweaters, t-shirts, longsleeve t-shirts, crew or v-neck pullovers, hooded pullovers, shirts, polo shirts, polo t-shirts, sweatshirts and fleecewear, namely, fleece tops and fleece bottoms; outerwear, namely, jackets, rain jackets, rain vests, wind jackets, hooded jackets, wind shirts, vests, fleece jackets, fleece vests, rain pants, mittens and scarves; golfwear, namely, golf

shirts, golf shorts, and golf pants; and headwear, namely, baseball caps, golf hats, caps, hats, beanies, toques, fleece hats and earbands."

c. The goods recited in Application Serial No. 85,418,793 are as follows: "clothing, namely, leggings, socks, jerseys; tank tops for males; tank tops for females; ankle socks; baselayer bottoms; jogging pants; knit shirts; men's socks; moisture-wicking sports bras; moisture-wicking sports pants; sleeveless jerseys; sport shirts; sports bras; sports pants; sports shirts [*sic*]; sweat pants; undershirts."

23. The goods recited in Registration Nos. 4,561,374 and 4,535,498 (collectively, the "Otis Products") do not include underwear, undershirts, or loungewear.

24. The goods recited in Application Serial No. 85,418,793, which was registered on June 6, 2017 as No. 5,218,701, include "undershirts," but not underwear or loungewear. The filing date of this intent-to-use basis application, September 9, 2011, is at least two years ***after*** Tommy John's first use of its SECOND SKIN Mark.

25. On information and belief, neither Otis nor Defendants ever manifested an intent to use the name "Second Skin" in connection with the sale of underwear, undershirts, or loungewear prior to 2011, nor made any use of the name "Second Skin" in connection with the sale of underwear, undershirts, or loungewear prior to February 2017.

26. Between January 27, 2017 and June 26, 2017, Tommy John and Defendants exchanged written correspondence concerning Tommy John's and Defendants' respective uses of the name "Second Skin." Tommy John's correspondence alerted Defendants to its position that it had priority of use in its SECOND SKIN Mark for its products.

27. Defendants did not initially respond to Tommy John's June 26, 2017 letter. Over the ensuing weeks, Tommy John attempted to contact Defendants' representative on multiple occasions, by phone and e-mail, without success; Tommy John finally received an acknowledgement of receipt of Tommy John's letter at the end of July 2017. During this time period, while failing to respond to Tommy John's communications, on information and belief Defendants began a dramatic expansion of their use of the Infringing Mark through the sale of the Infringing Products.

28. Any purported rights held by Defendants in the Infringing Mark based on the alleged assignment of trademark rights from Otis are invalid and/or do not provide Defendants with priority over Tommy John's SECOND SKIN Mark, including because: (i) on information and belief, Otis did not make continuous use of the "Second Skin" name on the Otis Products, and thus abandoned any such rights before any purported assignment; (ii) on information and belief, Defendants did not make continuous use of the "Second Skin" name on the Otis Products, and thus abandoned any such rights after any purported assignment; (iii) on information and belief, because Defendants did not use the "Second Skin" name on the Otis Products, Defendants failed to acquire the goodwill associated with that name, and thus the assignment was invalid as an assignment in gross or "naked license"; and (iv) even if subsisting, any assigned registrations and/or applications did not convey any senior rights to use the "Second Skin" name on or in connection with the Infringing Products, for which goods Tommy John has priority.

## FIRST CLAIM FOR RELIEF
## Federal Trademark Infringement and Unfair Competition, 15 U.S.C. § 1125(a)

29. Tommy John incorporates by reference the preceding paragraphs.

30. Tommy John has nationwide, common law rights in the SECOND SKIN Mark senior to any and all rights (if any exist) that Defendants may have in the Infringing Mark.

31. Defendants, directly and/or indirectly, are using the Infringing Mark on and in connection with the Infringing Products in a manner that is likely to cause confusion, mistake and deception and that creates a false and misleading impression as to the affiliation, connection, or association of Defendants with Tommy John and/or its SECOND SKIN Mark, and as to the origin, sponsorship, endorsement and approval of the Infringing Products by Tommy John.

32. Defendants' selection, adoption and use of the Infringing Mark, for use on or in connection with the Infringing Products, is intended to reap the benefit of the goodwill in the SECOND SKIN Mark, and constitutes unfair competition and false designation of origin.

33. Defendants' conduct is intentional, willful, deliberate, in bad faith and undertaken with knowledge of Tommy John's prior rights in the SECOND SKIN Mark, and with full knowledge that Defendants have no right, license, or authority to use Tommy John's SECOND SKIN Mark or any confusingly similar variation thereof.

34. Tommy John is entitled to damages pursuant to 15 U.S.C. § 1117(a), including Defendants' profits, Tommy John's damages and Tommy John's costs and attorneys' fees.

35. Defendants' conduct has caused and is causing irreparable injury to Tommy John and its SECOND SKIN Mark and, unless enjoined by this Court, will continue to both damage Tommy John and deceive the public. Tommy John has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## Common Law Trademark Infringement

36. Tommy John incorporates by reference the preceding paragraphs.

37. Tommy John has nationwide, common law rights in the SECOND SKIN Mark senior to any and all rights (if any exist) that Defendants may have in the Infringing Mark.

38. By the foregoing acts, Defendants, directly and/or indirectly, are using the Infringing Mark on and in connection with their Infringing Products in a manner that is likely to

cause confusion, mistake and deception and that creates a false and misleading impression as to the origin, sponsorship, endorsement, approval, affiliation, connection, or association of Defendants and/or the Infringing Products with Tommy John and/or its SECOND SKIN Mark.

39. Defendants' conduct is intentional, willful, deliberate, in bad faith and undertaken with knowledge of Tommy John's prior rights in the SECOND SKIN Mark, and with full knowledge that Defendants have no right, license, or authority to use Tommy John's SECOND SKIN Mark or any confusingly similar variation thereof.

40. Defendants' acts constitute common law trademark infringement and have created and will continue to create a likelihood of confusion, thereby causing irreparable harm to Tommy John and its SECOND SKIN Mark, including without limitation, injury to Tommy John's reputation and business identity and diminished goodwill and reputation of the SECOND SKIN Mark. Tommy John has no adequate remedy at law for this injury.

41. Defendants' conduct has caused and is causing monetary injury to Tommy John, in an amount to be determined at trial, including, but not limited to, actual damages and lost profits, and merits punitive and exemplary damages in an amount sufficient to punish Defendants and deter such conduct in the future.

42. Defendants' conduct has caused and is causing irreparable injury to Tommy John and, unless enjoined by this Court, will continue to both damage Tommy John and deceive the public. Tommy John has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## Common Law Unfair Competition

43. Tommy John incorporates by reference the preceding paragraphs.

44. Tommy John has invested a substantial amount of time, effort and money to develop the SECOND SKIN Mark and its brand, which is valuable in New York and the United

States as a whole.  As a result of Tommy John's labors, consumers in New York and the United States have come to expect that SECOND SKIN-branded underwear, undershirts and loungewear come from a single source other than Defendants.

45. By the foregoing acts, Defendants, directly and/or indirectly, are misappropriating the goodwill of Tommy John and the goodwill associated with the SECOND SKIN Mark by using the Infringing Mark in a manner that has caused actual confusion, and is likely to cause confusion, mistake and deception and that creates a false and misleading impression as to the origin, sponsorship, endorsement, approval, affiliation, connection, or association of Defendants and the Infringing Products with Tommy John and/or its SECOND SKIN Mark, thereby unfairly competing with Tommy John.

46. Defendants' conduct is intentional, willful, deliberate, in bad faith and undertaken with knowledge of Tommy John's prior rights in the SECOND SKIN Mark, and with full knowledge that Defendants have no right, license, or authority to use Tommy John's SECOND SKIN Mark or any confusingly similar variation thereof.

47. Defendants' conduct has caused and is causing monetary injury to Tommy John in an amount to be determined at trial, including, but not limited to, actual damages and lost profits, and merits punitive and exemplary damages in an amount sufficient to punish Defendants and deter such conduct in the future.

48. In addition, Defendants' conduct has caused and is causing irreparable injury to Tommy John and, unless enjoined by this Court, will continue to both damage Tommy John and deceive the public.  Tommy John has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Cancellation of Federal Registration No. 5,218,701 Under 15 U.S.C. § 1119**

49. Tommy John incorporates by reference the preceding paragraphs.

50. Registration No. 5,218,701, for use of the Infringing Mark by Defendants on the Infringing Products, creates a likelihood of confusion with Tommy John's SECOND SKIN Mark, for which Tommy John has priority.

51. By reason of the foregoing acts, Tommy John believes it will be damaged by the continued registration of Registration No. 5,218,701, and thus hereby petitions to cancel it.

**FIFTH CLAIM FOR RELIEF**
**Cancellation of Federal Registration Nos. 4,561, 374, 4,535,498, and 5,218,701 Under 15 U.S.C. § 1119**

52. Tommy John incorporates by reference the preceding paragraphs.

53. On information and belief, Otis did not make continuous use of the "Second Skin" name covered by Registration Nos. 4,561,374 and 4,535,498 on the Otis Products, and thus abandoned these registrations, and any rights contained therein, before any purported assignment to Defendants.

54. On information and belief, Defendants did not make continuous use of the "Second Skin" name covered by Registration Nos. 4,561,374 and 4,535,498 on the Otis Products and/or failed to acquire or maintain the goodwill associated with any rights it may have been assigned in the "Second Skin" name; thus, any purported assignment was invalid.

55. In the alternative, in the event the Court finds any likelihood of confusion between Tommy John's use of its SECOND SKIN Mark and Defendants' use of the "Second Skin" designation on the Otis Products, and to the extent that Tommy John is harmed by the assertion of purported trademark rights in the "Second Skin" name against it, allegedly deriving from Registration Nos. 4,561,374 and 4,535,498 as to the Otis Products, then Tommy John pleads that, by reason of the foregoing acts, it believes it will be damaged by the continued registration of Registration Nos. 4,561,374 and 4,535,498 and thus hereby petitions to cancel them. Further, to the extent Defendants' purported trademark rights extend to Registration No.

5,218,701 as to Defendants' Products, Tommy John additionally pleads in the alternative that, by reason of the foregoing acts, it believes it will be damaged by the continued registration of Registration No. 5,218,701 and thus hereby petitions to cancel it.

**SIXTH CLAIM FOR RELIEF**
**Declaration of Non-Infringement Under 28 U.S.C. § 2201**

56. Tommy John incorporates by reference the preceding paragraphs.

57. An actual, present and justiciable controversy has arisen between Defendants and Tommy John concerning Tommy John's use of its SECOND SKIN Mark on Tommy John's products. Defendants and Tommy John have adverse legal interests. Defendants have made clear to Tommy John that Defendants believe that Tommy John's use of its SECOND SKIN Mark infringes Defendants' purported trademark rights in their Infringing Mark, and Tommy John has denied any wrongdoing. The dispute between Tommy John and Defendants is substantial, definite and immediate, and not hypothetical.

58. Tommy John's use of its SECOND SKIN Mark on its underwear, undershirts and loungewear is not likely to cause confusion as to the origin, sponsorship, endorsement, approval, affiliation, connection, or association with Defendants' purported use, if any, of the "Second Skin" name on the Otis Products. In the alternative, even if such confusion were likely, Tommy John made open and continuous use of its SECOND SKIN Mark since 2009 without any complaint from Otis or Defendants until January 2017—such delay establishes that Otis and/or Defendants have acquiesced to Tommy John's use of the SECOND SKIN Mark, that Otis and/or Defendants have foregone any actual or potential claims against Tommy John, and/or that such continued use by Tommy John is nonactionable as a matter of equity and law.

59. Tommy John's rights in the SECOND SKIN Mark as used on or in connection with underwear, undershirts and loungewear are senior to Defendants' purported rights, if any

exist, in the Infringing Mark for use on the Infringing Products. As the senior user, Tommy John has not infringed the purported rights claimed by Defendants and is not otherwise liable for violations of any such purported rights, if any exist.

60. Absent a declaration of the validity, enforceability and seniority of Tommy John's rights in its SECOND SKIN Mark, including Tommy John's non-infringement of any putative senior rights Defendants' may hold, if any, Defendants will continue to assert their putative rights in the "Second Skin" designation against Tommy John, thereby causing damage to Tommy John.

61. Tommy John seeks a declaration that the SECOND SKIN Mark is valid and enforceable under federal, state and common law; that Tommy John's rights in the SECOND SKIN Mark in connection with underwear, undershirts and loungewear, and any products naturally related to such products, are senior nationwide to the putative rights alleged by Defendants in the "Second Skin" designation; and that Tommy John has not infringed any trademark or related interest for which Defendants claim ownership in this action, or that any such use is nonactionable as a matter of equity and law.

62. In addition, because of the lack of a likelihood of confusion, Tommy John is entitled to a determination pursuant to 15 U.S.C. § 1119 that it has the right to registration of its SECOND SKIN Mark, Application Serial No. 87,353,905, and a directive to make appropriate entry of such registrability upon the records of the U.S. Patent and Trademark Office ("PTO").

63. To resolve the legal and factual questions raised by Defendants, and to afford Tommy John relief from the uncertainty and controversy that Defendants' assertions have raised, Tommy John is entitled to a declaratory judgment of its rights.

**PRAYER FOR RELIEF**

WHEREFORE, Tommy John prays for the following relief:

a. A judgment declaring that Defendants' use of the designation "Second Skin" on the Infringing Products infringes Tommy John's rights in its SECOND SKIN Mark.

b. A judgment declaring that Tommy John's use of its SECOND SKIN Mark on underwear, undershirts and loungewear does not infringe any allegedly senior trademark rights owned by Defendants (to the extent any exist) for the designation "Second Skin" on the Otis Products or any of Defendants' Products.

c. A judgment declaring that Tommy John has the right to use its SECOND SKIN Mark on the products it chooses to offer for sale, including underwear, undershirts and loungewear, and any products naturally related to such products, including, but not limited to, items such as sports bras, free from interference by Defendants, Defendants' officers, directors, agents, employees, attorneys, privies, representatives, successors, and assigns, and any and all persons acting in active concert or participation with or under authority from Defendants.

d. A judgment ordering that Defendants, their officers, directors, agents, servants, affiliates, employees, successors, assigns, parent and subsidiary companies, and representatives, and all those acting in privity or in concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from directly or indirectly:

    1. Affixing, applying, annexing, or using, in connection with the advertising, sale, or offering for sale of any products or services, the "Second Skin" name, or any designations confusingly similar thereto, or any other marks that might tend to falsely describe or represent Defendants' products or services as those of Tommy John;

2. Performing any actions or using any trademarks, service marks, or other words, names, titles, designs, or logos that are likely to cause confusion, to cause mistake, to deceive, or to otherwise mislead the trade or public into believing that Defendants' products or services are sponsored by, affiliated with, or in any way connected to Tommy John or its SECOND SKIN Mark;

3. Using or seeking to register any trademarks, service marks, or other words, names, titles, designs, or logos, or engaging in any other conduct that creates a likelihood of injury to the business reputation of Tommy John, or a likelihood of misappropriating Tommy John's SECOND SKIN Mark and the goodwill associated therewith;

4. Engaging in any trade practices, including those complained of herein, which unfairly compete with or injure Tommy John, its business, or the goodwill appertaining thereto;

5. Taking any action that falsely suggests or implies that Tommy John authorizes or endorses Defendants or their products or services, or suggests or implies that Defendants are in any way connected to or associated with Tommy John or its SECOND SKIN Mark;

6. Discounting any of the Infringing Products for sale under the Infringing Mark through third parties such as discounters; and

7. Assisting any third party or requesting any third party to undertake any actions prohibited in subparagraphs (1)-(6) above.

e. A judgment that Defendants, their officers, directors, agents, servants, affiliates, employees, successors, assigns, parent and subsidiary companies, and representatives, and all those acting in privity or in concert or participation with Defendants, and all third parties—including but not limited to manufacturers, distributors, merchandisers, vendors, and those engaged in any other form of trade—that have sold or are offering for sale any goods, products, and/or inventory that display, are sold under, or otherwise feature the "Second Skin" name or any designations confusingly similar thereto be ordered to recall and destroy:

1. All marketing, advertising and promotional materials that display or otherwise feature the "Second Skin" name, or any designations confusingly similar thereto in any distribution channel, including but not limited to online, brick-and-mortar stores and any other channel of distribution; and

2. All goods, products and/or inventory in trade that display, are sold under, or otherwise feature the "Second Skin" name, or any designations confusingly similar thereto, via any distribution channel, including but not limited to online, brick-and-mortar stores and any other channel of distribution.

f. A judgment ordering that Defendants disable the websites located at http://www.secondskin.com and http://www.dickssportinggoods.com/s/second-skin, and that Defendants disable any other website under their operation or control that displays the "Second Skin" designation in the domain name or in its contents, until such time as all uses of the "Second Skin" name, or any designations confusingly similar thereto, have been removed.

g. An order cancelling Registration Nos. 4,561,374, 4,535,498 and 5,218,701.

      h. An order awarding Tommy John its damages (including lost profits), costs, any attorneys' and investigators' fees, punitive and exemplary damages in an amount sufficient to punish Defendants and deter others, and an accounting and disgorgement of Defendants' profits, pursuant to 15 U.S.C. § 1117 and any other applicable law.

i. A determination pursuant to 15 U.S.C. § 1119 that Tommy John has the right to registration of its SECOND SKIN Mark, Application Serial No. 87,353,905, and a directive to make appropriate entry of such registrability upon the records of the PTO.

j. Such other, further, or different relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

Dated: New York, New York
September 13, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ Todd Anten
Todd Anten
Claudia T. Bogdanos
Donald J. Reinhard, II (admission pending)

51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
toddanten@quinnemanuel.com
claudiabogdanos@quinnemanuel.com
donaldreinhard@quinnemanuel.com

*Attorneys for Plaintiff Tommy John, Inc.*